**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUAVA FAMILY, INC., <br><br>          Plaintiff, <br>   vs. <br>GUAVA KIDS, LLC, <br><br>          Defendant. | CASE NO. 12CV2239 WQH (BGS) <br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss and in the Alternative to Transfer Venue ("Motion to Dismiss") filed by Defendant Guava Kids, LLC.  (ECF No. 5)

**BACKGROUND**

**I.   Procedural History**

On September 13, 2012, Plaintiff Guava Family, Inc. initiated this action by filing a Complaint against Defendant Guava Kids, LLC.  (ECF No. 1).

On November 7, 2012, Defendant filed the Motion to Dismiss on the grounds that (1) the Court lacks personal jurisdiction over Defendant; (2) venue is improper in this district; and (3) the case should be transferred to the District of Oregon pursuant to 28 U.S.C. § 1404 and the doctrine of *forum non conveniens*.  (ECF No. 5).  On November 26, 2012, Plaintiff filed an opposition.  (ECF No. 8).  On December 3, 2012, Defendant filed a reply.  (ECF No. 9).

**II.  Allegations of the Complaint**

Plaintiff Guava Family is a California corporation, having a principal place of business in San Diego, California.

| | |
|---|---|
| 1 | |
| 2 | On information and belief Defendant Guava Kids LLC ('Guava Kids') is an Oregon company with its principal place of business in Beaverton, Oregon. |
| 3 | Jurisdiction is vested in this Court by virtue of 28 U.S.C. §§1331, 1338, and 1367. This action arises under the Lanham Act, Title 15, United States Code, Sections 1051–1127. |
| 4 | |
| 5 | Venue is proper under 28 U.S.C. §§1391(b). |
| 6 | Guava Kids sells, offers to sell, distributes, and advertises its products using the infringing trademark throughout the State of California, including the Southern District of California, and is subject to personal jurisdiction in this Court. |
| 7 | |
| 8 | Guava Family has continuously advertised and promoted its GoCrib children's travel crib product for sale under the Guava Family trademark since no later than September 13, 2009. |
| 9 | |
| 10 | Guava Family is the owner of U.S. Trademark Registration No. 3,846,252 for the trademark 'Guava Family' for cribs in International Class 20, which registered based on an application originally filed on the basis of intent to use on June 19, 2009. |
| 11 | |
| 12 | |
| 13 | Guava Family owns the registration for the internet domain www.guavafamily.com, which it registered on August 14, 2008. Guava Family has used the www.guavafamily.com domain for the promotion of products under the Guava Family trademark continuously since at least September of 2009. |
| 14 | |
| 15 | On December 8, 2009, Guava Kids filed an application to register the trademark Guava Kids based on intent to use for 'Baby layettes for clothing; Booties; Children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Children's and infants' cloth bibs; Children's cloth eating bibs; Children's headwear; Hats for infants, babies, toddlers and children; Infant and toddler one piece clothing; Mittens; Shirts for infants, babies, toddlers and children; Swaddling clothes' in International Class 25. |
| 16 | |
| 17 | |
| 18 | |
| 19 | Guava Kids first used the Guava Kids trademark in commerce on March 5, 2012. |
| 20 | |
| 21 | On July 17, 2012, U.S. Trademark Registration No. 4,176,029 issued to Guava Kids for the trademark Guava Kids for mittens and swaddling clothes in International Class 25. |
| 22 | |
| 23 | Guava Kids uses the trademark Guava Kids in connection with the sale of its only product, children's mittens which it calls 'guavamitts.' |
| 24 | Guava Kids has never sold swaddling clothes. |
| 25 | Guava Kids has never sold baby layettes for clothing; booties; children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; children's and infants' cloth bibs; children's cloth eating bibs; children's headwear; hats for infants, babies, toddlers and children; infant and toddler one piece clothing; or shirts for infants, babies, toddlers and children. |
| 26 | |
| 27 | |
| 28 | (ECF No. 1 at 1-3). The Complaint alleges that Defendant sells "guavamitts" and uses the |

name "Guava Kids," which allegedly infringe upon Plaintiff's registered trademark, "Guava Family." The Complaint purports to assert the following claims for relief: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) false designation of origin in violation of 15 U.S.C. § 1125; and (3) unfair competition in violation of California Business and Professions Code § 17200. *Id.* at 3-4. The Complaint requests preliminary and permanent injunctive relief, monetary damages, and reasonable costs and attorneys' fees. *Id.* at 4.

### III. Evidence Submitted by the Parties

"Guava Kids is a small company founded by Lili and [Linsey Ebuen] in Beaverton, Oregon in 2009." (Ebuen Decl. ¶ 1, ECF No. 5-3). "[O]n December 8, 2009, Lili and [Ebuen] without an attorney, filed an application to register the Guava Kids mark with the Trademark Office. We first used a slightly different version of the mark, Guavakids (no space), beginning in July 2011. Our first use of the Guava Kids mark in commerce was on March 5, 2012." *Id.* ¶ 6. On February 12, 2010, "[w]e filed to register Guava Kids, LLC as a business entity in Oregon." *Id.* "Our company has very limited contacts with California. We formed our company in Oregon and our company primarily does business from Oregon. Guava Kids is not registered or licensed to do business in California, does not pay taxes in California, has no bank accounts in California, and has no offices or staff in California." *Id.* ¶ 15. From August of 2011 to January of 2012, Guava Kids used the services of a Vista, California public relations agency, which "did not direct any marketing efforts at California, but rather just put together some general campaigns for us, as well as Oregon-specific campaigns." *Id.* ¶ 16. "[T]o date, we have had no marketing campaigns expressly targeted at California residents." *Id.* "Guava Kids also maintains a website, www.guavakids.com, that is accessible by anyone with an internet connection, including people in California. However, our website does not specifically target California residents." *Id.* ¶ 17. The goods that are sold on the website, mittens, "are not ... unique to California." *Id.* "[O]ur sales into California have been very limited. Up to the date Guava Family sued us, we had only made 4.35% of our total sales in California. Only 2.13% of our total sales were made to retailers located in Southern California. And only 0.072% – or $81 – of our sales were made in San Diego or Imperial Counties, ... the

counties that are served by this court." *Id.* ¶ 18; *see also* Ebuen Decl. No. 2 ¶ 2, ECF No. 11 ("Up to the date Guava Family sued us, we had sold four two-packs of mittens in San Diego and Imperial Counties, which I understand are the counties that are served by this court.").

On October 1, 2012, Guava Kids filed a suit against Guava Family in the District of Oregon after Defendants were threatened with being served with the Complaint filed by Guava Family in this Court. *See id.* ¶ 11-12.[1] "One of the reasons we filed the Oregon suit after it appeared to us that Guava Family was [] going to make good on its threat to proceed in this court was the simple logistics of being sued in such a distant forum." *Id.* ¶ 13. "As a small start-up, we do not have a lot of money to be paying lawyers, and we had a hard time finding an attorney in California who did not want a large sum of money to help us out." *Id.* "In contrast, we were able to secure lawyers in Oregon without having to make a large, upfront payment...." *Id.* "We don't have the money to fly down to San Diego for things like depositions and hearings, nor do we have the money to put our lawyers on a plane to San Diego. And as mothers of young children, attempting to get our business off the ground, having to go to San Diego is a significant interruption to our business and our family obligations." *Id.* "Prior to us filing the Oregon suit, to the best of our knowledge, Guava Family had not attempted to serve Guava Kids with the California complaint. In fact, apparently when Guava Family found out we were trying to serve them, Guava Family started trying to serve us. They eventually seemed to serve us through a mailing from California that was dated October 10, 2012." *Id.* ¶ 14.

Defendant submits screenshots, purportedly taken from the Guava Family website on December 3, 2012, showing a list of four stores selling Gauva Family goods within a 25-mile radius of Portland, Oregon (ECF No. 10-3), and a list of two stores selling Guava Family goods within a 25-mile radius of San Diego, California. (ECF No. 10-4). Defendant submits

---

[1]Defendant submitted a copy of a complaint filed by Defendant against Plaintiff in the District of Oregon, which seeks declaratory judgments "of no trademark infringement under the Lanham Act," "no false designation under the Lanham Act," and "no unfair competition under California state law." (Ebuen Decl. at Exh. 1, ECF No. 5-2 at 4-11). Defendant submitted copies of an answer to and a motion to dismiss that complaint. *Id.* at Exs. 2-3, *Id.* at 12-24).

1 screenshots, purportedly taken from the REI website on December 3, 2012, showing a list of 18 stores "near Portland, OR" selling the "Guava Family GoCrib Portable Travel Crib." (ECF No. 10 at 2, 10-5).

"Guava Family is a small company founded by Asa Griffin and [Scott Crumrine] in San Diego, California." (Crumrine Decl. ¶ 2, ECF No. 8-1). "Guava Family has no corporate presence in Oregon. Guava Family is not licensed or registered to do business in Oregon, does not pay taxes in Oregon, no bank accounts, no physical presence in the state, no boutique retailers, no unique sales relationships, and none of our major retailers has a warehouse in the state of Oregon." *Id.* ¶ 17.

Plaintiff submits screenshots, purportedly taken from the Guava Kids website on November 25, 2012, showing a list of stores that sell Guava Kids products, including 30 stores located in California. (Hangartner Decl. at Exh. A, ECF No. 8-3). In response, Ebuen states: "The California stores listed on [the Guava Kids] website are not 'authorized retailers.' The website listings merely provide locations where a consumer can locate our products." (Ebuen Decl. No. 2 ¶ 3, ECF No. 11). "As of September 12, 2012, Nordstrom did not appear on Guava Kids' website store locator function. Our arrangement with Nordstrom did not launch until September 21, 2012." *Id.* ¶ 4.

## PERSONAL JURISDICTION

Defendant moves to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). In the absence of an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (quotation omitted). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quotations omitted).

The exercise of personal jurisdiction over a nonresident defendant must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution. *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto*, 539 F.3d at 1015; *see also* Cal. Civ. Pro. Code § 410.10. "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *CollegeSource*, 653 F.3d at 1073 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1954)). Under due process analysis, a defendant may be subject to either general or specific personal jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

## I.     Contentions of the Parties

Defendant contends that the Court lacks general jurisdiction over Defendant because "the extent of [its] contacts with California are minimal sales, a website accessible by California residents, and a brief stint with a California PR agency." (ECF No. 5-1 at 7). Defendant contends that the Court lacks specific jurisdiction over Defendant because "Plaintiff cannot show that Defendant purposefully directed its activities at the Southern District of California. Moreover, Plaintiff cannot show that its claim arises out of Defendant's activities in the Southern District of California." *Id.* at 12.

Plaintiff does not contend that general jurisdiction exists over Defendant.[2] Plaintiff contends that the Court has specific jurisdiction because Defendant "has both purposefully directed its activities to California and consummated transactions within California." (ECF

---

[2] Plaintiff asserts: "Based on the information available without jurisdictional discovery, there is strong evidence establishing specific jurisdiction and thus Guava Family will not present arguments regarding general jurisdiction. Guava Family reserves the right to argue general jurisdiction if the Court determines that jurisdictional discovery is appropriate and additional facts regarding Guava Kids' contacts in California are developed." (ECF No. 8 at 5 n.1).

No. 8 at 5). Plaintiff asserts:

> Specifically, [Defendant] not only has significant direct sales into California amounting to 4.35% of its total revenues (estimated at approximately $4800.00), but it has its largest network of authorized retailers in the State of California. Among these are three large stores operated by Nordstrom, one of the largest high-end retail chains in the United States. [Defendant] also operates a fully interactive website at www.guavakids.com, that allows customers in California to directly purchase products.

*Id.* at 6. Plaintiff contends that "the claims in this case arise directly from [Defendant's] forum related activities" because Defendant "uses the Guava Kids trademark as well as the 'Guava Mitts' trademark on all of its products and marketing materials, including those distributed and sold in California." *Id.* Plaintiff contends that the Court's exercise of jurisdiction in this case is reasonable because Defendant sells and seeks sales throughout the United States, "[r]epresentatives of [Defendant] travel for trade shows," and Defendant "engaged a public relations firm in the Southern District of California to develop a marketing campaign." *Id.*

## II. Discussion

A court exercises specific personal jurisdiction over a defendant where "the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002) (citation omitted). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quotation omitted). "The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Id.* (quotation omitted).

### A.   Purposeful Availment or Direction

"Under the first prong of our three-part specific jurisdiction test, [plaintiff] must establish that [defendant] either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California.... [A]vailment and direction are ... two distinct concepts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff. Purposeful availment requires some kind of affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citations omitted). "A purposeful direction analysis ... is most often used in suits sounding in tort.... A showing that a defendant purposefully directed his conduct toward a forum state ... usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum...." *Schwarzenegger*, 374 F.3d at 802-03 (citation omitted).

The Complaint alleges claims sounding in tort; accordingly, the Court will analyze specific personal jurisdiction under the purposeful direction framework. *See Incorp Services Inc. v. Incsmart.Biz Inc.*, 11-CV-4660-EJD-PSG, 2012 WL 3685994 (N.D. Cal. Aug. 24, 2012) (claims brought under the Lanham Act "are claims 'sounding' in tort so to invoke purposeful direction analysis"); *see also Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because [Plaintiff] has alleged copyright infringement, a tort-like cause of action, purposeful direction is the proper analytical framework.") (internal quotation omitted); *Browne v. McCain*, 612 F. Supp. 2d 1118, 1123 (C.D. Cal. 2009).

Purposeful direction is evaluated using the three-part test taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under the *Calder* test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks

omitted).

### 1. Intentional Act

"We construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. "Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger and not the impingement of the bullet upon the other's person." *Id.* In this case, the Court finds that Defendant's act of selling products bearing the allegedly infringing trademark is sufficient to satisfy the "intentional act" element of the *Calder* test. *See id.* (in an action alleging the unauthorized use of a photograph in advertisements, Defendant committed an intentional act when it placed an advertisement in a newspaper); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (sending a letter was an intentional act).

### 2. Express Aiming

The Court of Appeals for the Ninth Circuit has emphasized that "'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction," *Schwarzenegger*, 374 F.3d at 805, and that "something more" means conduct expressly aimed at the forum. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) ("We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state.") (quoting *Bancroft*, 223 F.3d at 1087).

In this case, Plaintiff alleges, and Defendant does not dispute, that Defendant "advertises its products using the infringing trademark throughout the State of California, including the Southern District of California." (ECF No. 1 at 1). The record shows that Defendant's website, www.guavakids.com, is interactive and commercial in nature. There is evidence indicating that Defendant sold products on its website to consumers in California and shipped merchandise to California. Plaintiff submits a screenshot of Defendant's website, dated November 25, 2012, which shows a list of 30 stores located in California where Defendant sells its products, including three Nordstrom's stores. In response, Ebuen, a co-founder of Guava Family, states: "As of September 12, 2012, [the day before the Complaint

1  was filed,] Nordstrom did not appear on Guava Kids' website store locator function.  Our
2  arrangement with Nordstrom did not launch until September 21, 2012." (Ebuen Decl. No. 2
3  ¶ 4, ECF No. 11); *see also* ECF No. 9 at 6 ("For specific jurisdiction, the relevant contacts
4  occur prior to the event giving rise to the litigation.") (citing *Farmers Ins. Exch. v. Portage La
5  Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).  Defendant does not assert that any
6  of the other 27 California stores listed on its website began selling Defendant's products after
7  September 13, 2012.  The Court concludes that it is reasonable to infer that on September 13,
8  2012, the date on which the Complaint was filed, Defendant's products were available for sale
9  at the other 27 stores. *See Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw
10 reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction
11 is at stake.... This approach is in line with the pleading standard set forth by the Supreme Court
12 in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)."), *cert. granted*, 133 S. Ct. 1493 (U.S. 2013); *see
13 also Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1239 (E.D. Cal. 2005) ("When
14 determining whether Plaintiff has established a prima facie case of personal jurisdiction ...
15 reasonable inferences that can be drawn from the evidence must be drawn in Plaintiff's
16 favor.") (citing *Altmann v. Republic of Austria*, 317 F.3d 954, 962 (9th Cir. 2002)).

17       Based upon the evidence of sales in California and the uncontroverted allegations of
18 advertising directed into California, the Court finds that Plaintiff has made a prima facie
19 showing of conduct expressly aimed at the forum. *See Decker Coal Co.*, 805 F.2d at 840
20 (holding that "if the defendant directly solicits business in the forum state, the resulting
21 transactions will probably constitute the deliberate transaction of business invoking the
22 benefits of the forum state's laws."); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770,
23 774-75 (1984) (finding purposeful direction where defendant published magazines in Ohio and
24 circulated them in the forum state, New Hampshire); *California Board Sports, Inc. v. Griffin*,
25 10CV1849 WQH WVG, 2011 WL 671960 (S.D. Cal. Feb. 14, 2011) (finding that Defendant
26 "directed business activities at consumers in California by selling products on [its] website,"
27 "shipping merchandise to a San Diego address," "advertis[ing] extensively over the internet,"
28 and sending a cease and desist letter to plaintiff in California).

### 3. Foreseeable Harm

The final element requires that Defendant's conduct "caused harm that it knew was likely to be suffered in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (citing *Yahoo!*, 433 F.3d at 1206). "[T]his element does not require that the 'brunt' of the harm be suffered in the forum, as some previous cases had suggested, and ... this element may be established even if 'the bulk of the harm' occurs outside the forum. This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Id.* (citing *Yahoo!*, 433 F.3d at 1207; *Bancroft*, 223 F.3d at 1087)).

In this case, Plaintiff alleges that "Guava Kids sells, offers to sell, distributes, and advertises its products using the infringing trademark throughout the State of California, including the Southern District of California." (ECF No. 1 at 1). Plaintiff alleges that "Guava Kids' [trademark] infringement is knowing and willful" and that "Guava Kids' false designation of origin is knowing and willful." *Id.* at 3-4. Based upon these allegations, the Court finds it was foreseeable that Plaintiff would be harmed by the sale of products bearing an infringing trademark, and foreseeable that some of this harm would occur in California. The Court finds that Plaintiff has made a prima facie showing that Defendant purposefully directed its activities to California and California residents.

### B. Arises Out of Forum-Related Activities

The second requirement for specific jurisdiction is that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. "We measure this requirement in terms of 'but for' causation." *Bancroft*, 223 F.3d at 1088 (citing *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995)).

In this case, "but for" Plaintiff's allegations that "Guava Kids sells, offers to sell, distributes, and advertises its products using the infringing trademark throughout the State of California" (ECF No. 1 at 1), which the Court accepts as true for purposes of determining jurisdiction, Plaintiff could not assert its claim for unfair competition in violation of California Business and Professions Code § 17200. *See Bancroft,* 223 F.3d at 1088; *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (explaining that California

Business and Professions Code § 17200 "was not intended to regulate conduct unconnected to California"). Based upon these allegations, the Court finds that Plaintiff has made a prima facie showing that this action arose out of Defendant's contacts with California. *See Boschetto*, 539 F.3d at 1016; *see also California Board Sports, Inc.*, 2011 WL 671960 at *4.

### C.     Reasonableness

"For jurisdiction to be reasonable, it must comport with fair play and substantial justice." *Bancroft*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476). The reasonableness determination requires the consideration of the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Id.* (citing *Burger King*, 471 U.S. at 476-77). The Supreme Court has "explicitly place[d] upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a 'compelling case.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

The evidence in the record indicates that Defendant's California contacts include selling products with the allegedly infringing trademark in California, both in stores and on a website, as well as distributing marketing materials in California and shipping goods to California. Defendant states that Oregon would be a more convenient forum and that Defendant would be burdened by litigating this case in California. However, in the absence of any showing related to the remaining reasonableness factors, the Court finds that Defendant has failed to make a "compelling case" that the exercise of jurisdiction over Defendant by this Court is unreasonable. *Burger King*, 471 U.S. at 477. The Motion to Dismiss for lack of personal jurisdiction is denied.

### VENUE

Defendant moves to dismiss this case on the basis that venue is improper in the Southern District of California. Venue is proper in this District if Defendant "resides" in this District. 28 U.S.C. § 1391(a)(1). For purposes of venue, "an entity with the capacity to sue

and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question...." 28 U.S.C. § 1391(c)(2). Having found that Plaintiff has established a prima facie case that Defendant is subject to personal jurisdiction in this District, the Court denies the Motion to Dismiss for improper venue. *See* 28 U.S.C. §§ 1391(a)(1), 1391(c)(2).

## MOTION TO TRANSFER

Defendant moves for transfer of this action to the District of Oregon pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). The statute requires a court to consider the convenience of the parties and witnesses and the interests of justice. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). To undertake this analysis of "convenience" and the "interests of justice," a district court weighs "multiple factors," including the plaintiff's choice of forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the convenience of witnesses, the ease of access to sources of proof, the State that is most familiar with the governing law, the differences in the costs of litigation in the two forums, and the relevant public policy. *Id*. at 498-99. The party moving for a transfer pursuant to § 1404(a) bears the burden of showing that another forum is more convenient and serves the interest of justice. *See id*. at 499. "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. "Rather than relying on vague generalizations of inconvenience, the moving party must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998) (citing

1  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

2  Defendant contends that this action should be transferred to the District of Oregon because Defendant has "extensive contacts" with Oregon. (ECF No. 5-1 at 20). "Defendant formed in Oregon, created its brand in Oregon, and filed its trademark application from Oregon. Defendant has little contact with California, much less contact related to its trademark use." *Id.* at 20-21. Defendant asserts that "California is prohibitively more expensive for Defendant to litigate this cause of action." *Id.* at 21. Defendant contends that, in terms of public policy, "Oregon has a significant local interest in protecting its small business owners from intimidation tactics from out-of-state competitors." *Id.* at 21.

Plaintiff contends that "the parties' respective contacts with the forum weigh against transfer" because "Guava Family was founded in San Diego by two San Diego residents, and maintains its offices and all of its operations in San Diego." (ECF No. 8 at 9). Plaintiff asserts that "[i]t has no offices, operations, assets, or other significant contact with the State of Oregon. By contrast, Guava Kids has far more extensive contacts in California including a network of twenty-nine retailers in the state, and has engaged a public relations firm in this district." *Id.* Plaintiff asserts that, "[a]s evidenced by this motion, Guava Kids has found local counsel and has not hesitated to spend litigation fees on both a misguided counter-suit in the District of Oregon and this motion to dismiss." *Id.*

As discussed above, the evidence shows that Defendant sells its products in this District. Defendant does not assert that Oregon courts are more familiar than California courts with the governing law. Defendant has not made any showing of "who the key witnesses will be" in this case. *Cochran*, 58 F. Supp. 2d at 1119. The Court finds that any burden Defendant will incur litigating this case in California is roughly equivalent to any burden Plaintiff would incur litigating this case in Oregon. The Court does not find that Defendant has made "a strong showing of inconvenience" pursuant to the relevant § 1404 factors "to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. The motion to transfer pursuant to § 1404(a) is denied.

//

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss and in the Alternative to Transfer Venue (ECF No. 5) filed by Defendant Guava Kids, LLC is DENIED.

DATED: April 23, 2013

**WILLIAM Q. HAYES**
United States District Judge